In re Peter GOTTHEINER, Bankrupt.

UNITED STATES of America, Plaintiff,

v.

Peter GOTTHEINER, Defendant.

Bankruptcy No. 1–78–650.
Adversary Proceeding No. 1.

United States Bankruptcy Court,
N. D. California.

Feb. 6, 1980.

G. William Hunter, U. S. Atty., John D. O'Connor, Asst. U. S. Atty., Civ. Div., San Francisco, Cal., William C. Lengacher, Glenn G. Yanik, Trial Attys., Civ. Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONLEY S. BROWN, Bankruptcy Judge.

This matter came on for trial on January 16, 1980, in the above-entitled Court before

the Honorable Conley S. Brown, United States Bankruptcy Judge. The Court having fully considered all the evidence presented in the case, and being fully advised, makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff, United States of America, initiated this adversary proceeding on February 14, 1979, for the purpose of obtaining a determination that a debt owed by Defendant Peter Gottheiner to the United States was nondischargeable in bankruptcy pursuant to § 17a(4) of the Bankruptcy Act. Plaintiff also sought to have judgment on the debt for the amount owing.

2. Plaintiff is a judgment creditor of California Coordinated Health Care Services, Inc. (CCHCS) which is a defunct California corporation. The charter of CCHCS has been suspended since February 1, 1973, because of its failure to pay its state franchise tax for the year 1971.

3. During its corporate existence, CCHCS participated in the Medicare Program under the Social Security Act, 42 U.S.C. § 1395 *et seq.*, as a provider of services. CCHCS participated in the Medicare Program during the years 1968, 1969 and 1970 and terminated its participation on or about February 23, 1971.

4. In 1968, CCHCS became indebted to the United States. The indebtedness consisted of overpayments of Government funds in the amount of $289,658 and $24,000 in Government funds representing working capital advances. Additional overpayments and advances were made in 1969 and 1970. When CCHCS terminated its participation in the Medicare Program the total amount of its indebtedness to the United States was $812,351.66. Plaintiff obtained a judgment for this amount against CCHCS on October 6, 1978, in *United States v. California Coordinated Health Care Services, Inc. and Peter Gottheiner*, Civ. No. 77–0413–WTS, U.S. D.C., N.D.Calif. No amount of this judgment has been paid.

5. At all times during its corporate existence, Defendant Peter Gottheiner was the principal shareholder of CCHCS, owning at least 60 percent of the stock of the corporation. Beginning in 1969, Defendant Gottheiner became owner of 100 percent of the stock of CCHCS. He was President and member of the Board of Directors of CCHCS during the years 1967 through 1971. He was also administrator of CCHCS during the time of its participation in the Medicare Program.

6. From December 31, 1968, until the date CCHCS ceased doing business in March 1971, its assets at fair valuation were not sufficient to pay all its debts. On December 31, 1968, total liabilities exceeded assets by $2,780.17. By November 30, 1970, the date of the last Financial Statement, liabilities exceeded assets by $125,566.

7. From December 31, 1968, until the date CCHCS ceased doing business, Defendant Peter Gottheiner knew that the assets of CCHCS were insufficient to pay its debts and he knew that the CCHCS was indebted to the United States. In both cases, Defendant Gottheiner's knowledge of these facts came from discussions with CCHCS's accountant, Arthur C. Seideman and from the Financial Statements of CCHCS.

8. On January 28, 1969, Defendant Gottheiner and Dr. Robert Sitkin, who was an officer and director of CCHCS at the time, made a promissory note for $10,000 payable to Donald R. Wilkinson for value received by Defendant Gottheiner and Dr. Sitkin. The obligations evidenced by these promissory notes were paid in full with the corporate funds of CCHCS on April 15, 1969, and June 13, 1969. Defendant Gottheiner authorized these payments.

9. During 1970 Defendant Gottheiner caused CCHCS to make payments of $29,127 to himself. These payments represent the repayment of loans Defendant Gottheiner previously made to CCHCS.

10. During 1970, Defendant Gottheiner also caused CCHCS to transfer CCHCS funds to Health Help, Inc. (Health Help) and Comprehensive Rehabilitative Care, Inc. (CRC). Defendant Gottheiner was President of Health Help in 1970 and owned

60 percent of the stock. Defendant Gottheiner was also President of CRC in 1970 and received a salary of $24,000. Prior to February 2, 1970, Defendant Gottheiner owned 100 percent of the stock of CRC which was the incorporation of Defendant Gottheiner's physical therapy practice.

11. CCHCS transferred the amount of $9,157 in CCHCS' funds to Health Help in 1970 and this money was not returned to CCHCS. CCHCS transferred the amount of $3,632 in CCHCS' funds in 1970 and this money was not returned to CCHCS.

12. Finally, during 1969 and 1970, Defendant Gottheiner caused CCHCS to negotiate nine checks in the aggregate amount of $32,521 to Defendant Gottheiner and Health Help. These checks from Blue Cross of Northern California were originally made payable to CCHCS and their purpose was to reimburse CCHCS on an interim basis for the cost of services rendered by CCHCS to patients covered by the Medicare Program. Defendant Gottheiner and Health Help did not return these funds to CCHCS.

13. To the extent that these Findings of Fact include conclusions of law, they shall be deemed to be incorporated within the Conclusions of Law.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties to this action.

2. This Court has jurisdiction over the subject matter of this action.

3. Defendant Peter Gottheiner is liable to the United States under the provisions of 31 U.S.C. §§ 191, 192 for the payments made by CCHCS described in ¶s 8, 9, 10, 11 and 12 of the Findings of Fact. Corporate officers or directors, such as Defendant Gottheiner, who have knowledge or notice of a debt owed by an insolvent corporation to the United States and who authorized payments of corporate funds constituting an act of bankruptcy, without first paying the debts owed to the United States, become personally liable to the United States to the extent of the payments.

Lakeshore Apartments, Inc. v. United States, 351 F.2d 349, 353 (9th Cir. 1969); United States v. Spitzer, 261 F.Supp. 754, 755 (S.D.N.Y.1966); United States v. Sullivan, 214 F.Supp. 701, 703 (W.D.Pa.1963); 31 U.S.C. §§ 191, 192.

4. As a corporate officer and director, Defendant Gottheiner is charged with knowledge of facts contained in corporate books and records. Myzel v. Fields, 386 F.2d 718, 736 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). Moreover, an officer or director of a corporation is presumed to have known of all outstanding claims against a corporation. United States v. Spitzer, 261 F.Supp. 754, 755 (S.D.N.Y.1966).

5. A corporation is insolvent within the meaning of 31 U.S.C. § 191 when it is insolvent in the bankruptcy sense. United States v. Oklahoma, 261 U.S. 253, 261, 43 S.Ct. 295, 298, 67 L.Ed. 638 (1923). Under this standard a debtor is insolvent whenever the aggregate of his assets is less than the aggregate of his liabilities. Id. at 261, 43 S.Ct. at 298. CCHCS was insolvent from December 31, 1968, until it ceased doing business in 1971.

6. An "Act of Bankruptcy" within the meaning of 31 U.S.C. § 191 includes payments made to other creditors of an insolvent corporation on account of prior indebtedness which enabled those creditors to receive a greater percentage of their debt than the United States received. Lakeshore Apartments, Inc. v. United States, supra, 351 F.2d 349, 353; United States v. Gotwals, 156 F.2d 692, 695 (10th Cir. 1946), cert. denied, 329 U.S. 781, 67 S.Ct. 204, 91 L.Ed. 670 (1946). Each of the payments described in ¶s 8 and 9 of the Findings of Fact was a preferential transfer and, therefore, an "Act of Bankruptcy" and a violation of 31 U.S.C. § 191.

7. An "Act of Bankruptcy" within the meaning of 31 U.S.C. § 191 also includes a fraudulent transfer of the debtor's assets. United States v. Mr. Hamburg Bronx Corporation, 228 F.Supp. 115, 121 (S.D.N.Y.1964). Every transfer of assets

made or obligation incurred by a debtor is fraudulent as to an existing creditor of the debtor, if it is made or incurred with an actual intent to hinder, delay and defraud either existing or future creditors. Sections 3(a)(1), 67(d)(2)(d), 70(e)(1) of the Bankruptcy Act. The transfers of CCHCS's assets described in ¶s 10, 11 and 12 of the Findings of Fact were made by CCHCS and Defendant Peter Gottheiner with an actual intent to hinder, delay or defraud the United States as an existing creditor and were, therefore, fraudulent transfers and violations of 31 U.S.C. § 191.

8. A bankrupt is not entitled to a discharge of debtors created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity. Section 17a(4) of the Bankruptcy Act.

9. The word "misappropriation" within the meaning of § 17a(4) of the Bankruptcy Act includes preferential payments of corporate funds by an officer of a corporation to himself to liquidate legitimate claims he has against his insolvent corporation. *In re Bernard*, 87 F.2d 705, 706 and 707 (2nd Cir. 1937); *Kaufman v. Lederfine*, 49 F.Supp. 144 (S.D.N.Y.1943). The debt due the United States from Defendant Gottheiner resulting from the payments described in ¶9 of the Findings of Fact was created by the "misappropriation" of CCHCS's funds by Defendant Gottheiner and is a nondischargeable debt. Section 17a(4) of the Bankruptcy Act.

10. The term "misappropriation" within the meaning of § 17a(4) of the Bankruptcy Act also encompasses fraudulent conveyances of corporate assets rendering the corporation insolvent and unable to satisfy the claims of creditors. *In re Metz*, 6 F.2d 962, 963 (2nd Cir. 1925). The debts due the United States from Defendant Gottheiner resulting from the payments described in ¶s 10, 11 and 12 of the Findings of Fact were acts of "misappropriation" within the meaning of § 17a(4) of the Bankruptcy Act and the debts created thereby are nondischargeable. Section 17a(4) of the Bankruptcy Act.

11. Section 17a(4) of the Bankruptcy Act is also appropriately applied to prevent the discharge of debts owed by a corporate officer when they are created by the officer's misuse of his position to gain a personal benefit at the expense of the corporation or corporate creditors. *John P. Maguire & Co. v. Herzog*, 421 F.2d 419, 422 (5th Cir. 1970); *In re Kelley*, 442 F.Supp. 525, 526 (E.D.Va.1978). The debts due the United States from Defendant Gottheiner resulting from the payments described in ¶¶ 8, 9, 10, 11 and 12 of the Findings of Fact personally benefited Defendant Gottheiner at the expense of CCHCS and the United States and are nondischargeable. Section 17a(4) of the Bankruptcy Act.

12. Assuming, arguendo, that Defendant Gottheiner did not personally benefit from the payments described in ¶ 8 of the Findings of Fact, the making of those preferential payments to one creditor of a corporation at a time of corporate insolvency is "defalcation" within the meaning of § 17a(4) of the Bankruptcy Act and debts created thereby are nondischargeable. *Kaufman v. Lederfine*, 49 F.Supp. 144, 145 (S.D.N.Y.1943); *see Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511 (2nd Cir. 1937).

13. As a result of the foregoing, this Court determines that Defendant Peter Gottheiner owes debts to the United States in the total amount of $89,487, that the debts are nondischargeable under § 17a(4) of the Bankruptcy Act, and that the United States is entitled to judgment against Defendant Gottheiner in the amount of $89,-487.

14. To the extent that these Conclusions of Law contain findings of fact, they shall be deemed incorporated within the Findings of Fact.