In re David Allen FUSSELL, Debtor.

UNITED VIRGINIA BANK, Appellant,

v.

David Allen FUSSELL, Appellee.

Civ. A. No. 81–0047(L).

United States District Court,
W. D. Virginia,
Lynchburg Division.

Oct. 16, 1981.

Leighton S. Houck, Caskie, Frost, Hobbs & Hamblen, Lynchburg, Va., for appellant.

Jesse C. Crumbley, III, Lynchburg, Va., for appellee.

Sherwood S. Day, Lynchburg, Va., Trustee.

## MEMORANDUM OPINION

TURK, Chief Judge.

This matter comes before the Court on appeal from a decision of the Bankruptcy Judge that a debt owed the plaintiff, United Virginia Bank, hereinafter U.V.B., by the bankrupt, David Allen Fussell, is dischargeable under the provisions of the Bankruptcy Code. U.V.B. contends on appeal that Sections 523(a)(4) and 523(a)(6) of the Bankruptcy Code mandate that the debt be deemed non-dischargeable.

Fussell filed a petition in bankruptcy in the United States Bankruptcy Court for the Western District of Virginia, Lynchburg Division, on June 24, 1980. U.V.B. instituted an adversary proceeding by filing a complaint objecting to the discharge of certain of Fussell's debts. U.V.B. alleged that Fussell, acting as president, controlling stockholder, and member of the board of directors of a corporation named Appomattox Agri-Service, Inc., repaid $42,707.63 in personal debts owed to him by the corporation in violation of a subrogation agreement executed between Fussell and U.V.B. U.V.B. also contended that Fussell had fraudulently executed a financing statement on behalf of Agri-Service by misrepresenting that the collateral covered by the financing statement was free and clear of liens. In an opinion rendered on January 28, 1981, the Bankruptcy Court found that Fussell was guilty of fraud within the meaning of Section 523(a)(2) of the Bankruptcy Code for the personal use of the proceeds of an $18,000.00 loan that had been made by U.V.B. to Fussell for Agri-Service. This debt was ruled non-dischargeable to the extent that the bank suffered a deficiency loss under the deed of trust that secured the loan. The Bankruptcy Court further ruled that Fussell had obtained money by false pretenses within the meaning of Section 523(a)(2)(A) of the Bankruptcy Code and held Fussell liable for the deficiency loss that the bank suffered as a result of the financing statement executed by Fussell on behalf of Agri-Service in favor of U.V.B. The findings of facts and conclusions of law rendered by the Bankruptcy Judge as to this allegation are uncontested on appeal and its judgment as to these claims is affirmed. U.V.B. contends, however, that the Bankruptcy Judge should have gone further and excepted from discharge the entire $42,707.63 that Fussell admitted to withdrawing from Agri-Service and not just the deficiency loss which U.V.B. suffered under the $18,000.00 loan.

### I.

The underlying facts involved in this appeal are largely undisputed. In June, 1978, debtor and Robert O. Bland purchased Appomattox Farm Supply Co., for $28,000.00. The business consisted of a general hardware and feed store. Each partner contributed $9,000.00 from personal funds toward the purchase price and the balance was obtained by loan of $10,000.00 from Fidelity American Bank, hereinafter "Fidelity."

In July, 1978, Fussell and Bland incorporated Appomattox Farm Supply Co. into Appomattox Agri-Service, Inc. The incorporaters each received 35 shares of the 100

shares originally issued. Fussell was named President of the corporation. Agri-Service, Inc. established a $50,000.00 line of credit with Fidelity which was personally endorsed by Bland and Fussell. Fidelity took a lien on the business assets of Agri-Service.

In March, 1979, debtor went to plaintiff U.V.B. seeking additional credit. Debtor applied for $100,000.00 business line of credit and manifested an aversion to personally endorsing the loan. Debtor furnished U.V.B. with the corporation's financial statement and profit and loss statement for the period July 1, 1978 through December 31, 1978. Since the company was heavily capitalized, U.V.B. agreed to extend a $50,000.00 line of credit to Agri-Service without personal endorsement from Fussell and Bland on condition that the stockholders of Agri-Service would execute a subordination agreement with U.V.B. Fussell and Bland executed a subordination agreement with U.V.B. on March 30, 1979. This agreement provided that any loans made by Fussell and Bland or their successors to Agri-Service would not be repaid until the corporation's indebtedness to U.V.B. was eliminated.

In addition, Fussell stated that the approved line of credit was insufficient. U.V.B. responded that an additional loan of $15,000.00 would be approved provided that Fussell and Bland personally endorsed the loan to the corporation. Thereupon the secured $50,000.00 line of credit loan and the $15,000.00 loan, with the personal endorsements, were accepted by the corporation and the banking connection was established.

A portion of these loan funds was paid to Bland for the purchase of his 35 shares of Agri-Service's capital stock. The effect of this stock transfer was to make Fussell the majority stockholder.

Agri-Service continued to have cash flow problems and in the summer of 1979 debtor contacted U.V.B. for an increase in the corporation's line of credit. The credit talks continued pending the accountant's completion of the year-end financial statements and a twelve month cash flow projection.

On October 4, 1979 Fussell borrowed $50,000.00 from U.V.B. upon his personal note secured by a subordinate deed of trust upon his residential farm property.

Thereafter, on October 26, 1979, an additional loan was made by U.V.B. to Agri-Service in the amount of $8,500.00. The purpose of the loan was to cover an Agri-Service overdraft held by the bank and to cover temporary business expenses while the bank was considering Agri-Service's application for increase of its business line of credit.

On November 27, 1979 the corporate line of credit was increased to $100,000.00 and U.V.B. extended the full credit to Fussell by an additional loan of $26,500.00. The following day debtor applied for an additional $18,000.00 to pay the purchase price for a truck load of wood stoves. Upon the understanding that the loan fund was to be used to pay for the wood stoves and add to the stove inventory, U.V.B. loaned Fussell $18,000.00, upon his demand note secured by a subordinate deed of trust on three parcels of land owned by the debtor. The loan proceeds were deposited in Agri-Service's checking account. The day after this loan was made, November 28, 1979, debtor withdrew $20,000.00 from the corporation's checking account for personal use as a credit upon his account for the personal loans previously made to the corporation. Except for the $18,000.00 loan deposit to the corporate checking account, the $20,000.00 withdrawal by the debtor would not have been possible as there was a balance of only $6,907.40 in the account at that time.

The corporation's cash flow problem persisted and its checking account was repeatedly overdrawn. Fussell made several deposits to cover Agri-Service's overdrafts, which were repaid from the first available funds. Excluding the repayment of these temporary loans to cover the overdrafts, Fussell withdrew from the corporate checking account $39,907.63 for credit upon his loan account of $75,203.35 between October 4, 1979 and March 11, 1980. U.V.B. first learned of the withdrawals by Fussell from Agri-Service's checking account on March

20, 1980. The involuntary petition in bankruptcy was filed on June 24, 1980.

In its opinion rendered on January 20, 1981, the bankruptcy court determined that Fussell offered the same three machines as security for two conflicting loans. The court held that "[t]he preponderance of the evidence is clear and convincing that debtor obtained the loan of money by false representation within the meaning of § 523(a)(2)(A)." Accordingly, the court excepted from discharge the amount of U.V.B.'s loss as a result of the deficiency of recovery from the collateral for the November 28, 1979 $18,000.00 loan made by U.V.B. used to purchase wood stoves and Fidelity's superior lien claim for $7,480.76 secured by three pieces of machinery originally purchased by debtor and Bland.

The Court considered U.V.B.'s § 523(a)(4) and § 523(a)(6) claims to be without merit. The Court determined that the repayments of Fussell's loans to Agri-Service did not constitute "fraud or defalcation while acting in a fiduciary capacity." The Court held that the loan repayments were not effectuated in violation of § 523(a)(4) because of the absence of a fiduciary relationship between plaintiff and debtor. The Court considered the foundation of the § 523(a)(4) allegation to be the "subordination agreement entered into by debtor as a material consideration of the initial loan by extension of a $50,000.00 line of credit to the Corporation." The Court determined that the subordination agreement, by itself, did not establish the fiduciary capacity required for § 523(a)(4) violation. The Court further maintained that U.V.B. had not demonstrated the element of actual fraud on the part of the debtor required to prove embezzlement under § 523(a)(4). Accordingly, the Court determined that U.V.B.'s § 523(a)(4) claim was without merit.

The Court disposed of U.V.B.'s § 523(a)(6) allegation in similar fashion. The Court held that debtor's breach of the subordination agreement did not constitute a "willful and malicious injury by the debtor to another entity or to the property of another entity" within the meaning of § 523(a)(6).

The Court considered the fact that the repayments to Fussell were "bona fide debts of the corporation" and that "[i]n this case there was no conversion or other willful injury to the property of another and certainly not to any property of the plaintiff." Consequently, the Court considered this allegation to be without merit.

U.V.B. appealed the bankruptcy court's decision as to the § 523(a)(4) and § 523(a)(6) claims. This Court believes U.V.B.'s appeal to be meritorious and accordingly reverses the judgment of the bankruptcy court as to these claims.

### IIa

Appellant U.V.B. contends that § 523(a)(4) of the Bankruptcy Code protects its claim from the operation of defendant's discharge. § 523(a)(4) provides that:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;"

11 U.S.C. § 523(a)(4). U.V.B. argues that the loan repayments amount to misappropriation by the defendant while acting in a fiduciary capacity, barring discharge of the debt owed to U.V.B. The debtor, however, contends that he did not have a fiduciary relationship with U.V.B. within the meaning of the bankruptcy statute.

The precise meaning of the term "fiduciary capacity" in § 523(a)(4) of the Bankruptcy Code is uncertain. "The qualification that the debtor be acting in a fiduciary capacity has consistently, since its appearance in the Act of 1841, been limited in its application to what may be described as technical or express trusts, and not to trusts *ex maleficio* that may be imposed because of the very act of wrongdoing out of which the contested debt arose." 3 Collier on Bankruptcy, 15th ed., Section 523.14, 523–99; *see also, Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Debtor contended, and the bankruptcy court agreed, that Fussell was not in a fiduciary capacity with respect to U.V.B. as contemplated by the statute solely by

operation of the subrogation agreement. U.V.B. maintains on appeal, however, that Fussell's position as president, director and controlling stockholder of Agri-Service establishes the requisite fiduciary capacity.

The former Bankruptcy Act contained a provision expressly excepting from discharge debts created by the fraud, embezzlement, misappropriation or defalcation of the debtor while acting as an officer or in any fiduciary capacity. 11 U.S.C. § 35(a)(4). No reference to an "officer" is contained in § 523(a)(4) of the new Bankruptcy Code. Nevertheless, this "omission is without significance because an officer who misappropriates funds of a corporation is acting in a fiduciary capacity, and despite the deletion of the word 'officer,' the debt would be nondischargeable." 3 Collier on Bankruptcy, 15th ed., Sections 523.14, 523.94 n.1. Similarly, in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), the United States Supreme Court held that the "standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders." *Id.* at 307, 60 S.Ct. at 245. In *Pepper*, the Court held that the bad faith of a corporate officer in the corporate bankruptcy proceeding could be used to set aside a claim even if it has been reduced to a judgment.

The Supreme Court in *Pepper*, however, did not hold that a corporate creditor is entitled to a cause of action in its own right against corporate officers. The Court stated that "[w]hile normally that fiduciary obligation is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee." *Id.* The Court in *Kelley v. Conwed Corporation*, 429 F.Supp. 969 (E.D.Va.1977), cited this language from *Pepper* for the proposition that an individual corporate creditor may not assert a § 523(a)(4) claim against corporate officers. In *Kelley v. Conwed Corp.*, the defendant-debtor was president and sole stockholder of a bankrupt corporation. The defendant paid himself funds from the corporate account just prior to the firm's insolvency and further caused the insolvent corporation to transfer funds to a solvent corporation controlled by the defendant. The Court held that:

> Once bankruptcy is begun and the assets of the corporation are controlled by a court of equity, the interests of corporate creditors are protected by the trustee. Plaintiff has cited no authority for the proposition that an individual creditor may recover against a corporate officer for a general misappropriation of corporate funds.
>
> There is no question but that the defendant's actions created a claim against him in the amount misappropriated by him on behalf of the corporation or its trustee. This does not mean the defendant is fully liable to each individual creditor who was left unpaid by the insolvency of Specialties.

*Id.* at 971. The district court in *Kelley* remanded the case so that the bankruptcy court could consider reopening the bankruptcy of the corporation to permit the presentation by the corporate trustee of the claim of misappropriation against the defendant. The court determined that any recovery would be for the benefit of all of the corporation's creditors. The bankruptcy court, on remand, deemed the debt nondischargeable under § 523(a)(4) and this determination was affirmed by the district court on appeal. *See, In re Kelley*, 442 F.Supp. 525 (E.D.Va.1978). In essence, *Kelley* precludes a mere corporate creditor from suing a corporate officer for misappropriation of corporate funds under § 523(a)(4). In fact, many of the cases involving § 523(a)(4) allegations were brought by either the trustee in bankruptcy or the assignee in an assignment for the benefit of creditors. *See, Matter of Stevens*, 476 F.Supp. 147 (D.N.J.1977); *Matter of Whitlock*, 449 F.Supp. 1383 (W.D.Mo. 1978); *In re Hammond*, 98 F.2d 703 (2nd Cir.), *cert. denied*, 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1938); *In re Bernard*, 87 F.2d 705 (2d Cir. 1937).

While the appellant in the present case, U.V.B., is a corporate creditor of Agri-Service, Inc., the decision in *Kelley v. Conwed*,

*Inc.* does not mandate that this case be remanded to the Bankruptcy Court. In *Kelley* the Court stated that

> No allegation or proof in this case indicates that the funds misappropriated bore any special relationship to the pre-existing debt owed the plaintiff. This case is thus distinguishable from the myriad of cases under § 17a(4) in which the misappropriator bore a particular duty to someone regarding specific property or monies.

429 F.Supp. at 972. The present case involves such a special relationship. Fussell's dealings with U.V.B. were all undertaken pursuant to the subrogation agreement. The existence of the subrogation agreement, when considered in conjunction with Fussell's status as President, majority shareholder and member of the board of directors of Agri-Service, Inc., constitutes such a special relationship allowing U.V.B., as a corporate creditor, to maintain this cause of action.

It is well established that corporate officers occupy a fiduciary relationship to the corporation and its creditors. *See Pepper v. Litton, supra.* Indeed, the "president of a private corporation entrusted with funds for a particular purpose ... [has] been held to be acting in a fiduciary capacity within the meaning of this provision." 3 Collier on Bankruptcy, 15th ed., Section 523.14, 523–104; *see also, Bloemecke v. Applegate,* 271 F.2d 595 (3rd Cir. 1921); *In re Metz,* 6 F.2d 962 (2nd Cir. 1925); *In re Bernard,* 87 F.2d 705 (2nd Cir. 1937); *John P. Maguire & Co. v. Herzog,* 421 F.2d 419 (5th Cir. 1970); *Hamby v. St. Paul Mercury Indemnity Company,* 217 F.2d 78 (4th Cir. 1954). Under the terms of the subrogation agreement, Fussell's personal loans to Agri-Service, Inc. were not to be repaid until after the U.V.B. indebtedness was satisfied. In *Herzog,* particular funds owed to the creditor under a floor plan financing arrangement were diverted by the bankrupt to pay off the claims of other corporate creditors to whom he was secondarily liable. The Fifth Circuit in *Herzog* upheld a factual finding that the bankrupt officer's personal liability to the corporate creditor

was created by the misappropriation of funds. Because he had used his corporate office to obtain a personal benefit at the expense of corporate creditors, their claims were cognizable in his individual bankruptcy. The Court stated that:

> Hence it can be seen that § 17(a)(4) has been applied when an officer of a corporation has misused his position to gain a personal benefit at the expense of the corporation or corporate creditors. The District Court found that appellant was partially motivated by a desire to indemnify himself against loss when he applied proceeds owing to appellee to other claims on which he was secondarily liable. This is a factual determination to be made by the trier of fact. A careful review of the trial record and briefs of the parties convinces us that such finding was not clearly erroneous.

421 F.2d at 422. In the present case, Fussell misused his position as a corporate officer to obtain repayment of his personal loans to Agri-Service, Inc., in direct contravention of the subrogation agreement. It is uncontroverted that Fussell personally benefited from the use of such funds. Section 523(a)(4) of the Bankruptcy Code is appropriately applied to prevent the discharge of such debts.

Such a diversion of corporate funds to personal use in violation of the terms of the subordination agreement constitutes the "fraud or defalcation" within the meaning of § 523(a)(4). The loan repayments that Fussell withdrew from Agri-Service constituted fiduciary fraud. The subordination agreement imposed the duty upon Fussell not to withdraw funds from the corporation and the terms of the agreement expressly provide that such a duty was a continuing duty. The subordination agreement was pledged as collateral for the loans made at that time by U.V.B. and also for loans to be made in the future by U.V.B.

The loan repayments which Fussell withdrew from Agri-Service were also a defalcation within the meaning of § 523(a)(4). Improper application of corporate funds by

the officer of a corporation has been held to constitute a "defalcation" within the meaning of the bankruptcy act. *Kadish v. Phoenix-Scotts Sports Co.,* 11 Ariz.App. 575, 466 P.2d 794 (1970). The term "defalcation" has been construed to be broader than embezzlement or misappropriation. 3 Collier on Bankruptcy, 15th ed., Section 523.14(b), page 523–96. Cases which have previously been construed to constitute "misappropriation" by corporate officers under § 17(a)(4) of the former Bankruptcy Act would now fall under the broader term "defalcation." *See John P. Maguire and Co., Inc. v. Herzog,* 421 F.2d 419 (5th Cir. 1970); *In re Bernard,* 87 F.2d 705 (2nd Cir. 1937); *In re Metz,* 6 F. 962 (2nd Cir. 1925); *Hamby v. St. Paul,* 217 F.2d 78 (4th Cir. 1954). The facts in *In re Gottheiner,* 3 B.R. 404 (N.D.Cal. 1980) are very similar to the facts in this case. The debtor in *Gottheiner* was the principal shareholder, president and member of the board of directors of a corporation. *Gottheiner* caused the corporation to repay loans he had previously made to the corporation. These loan repayments caused the corporation to become insolvent. The corporation was indebted to the United States and the government sought to have its debts adjudged non-dischargeable because of the fraudulent loan repayments. The bankruptcy court deemed these debts to be nondischargeable stating that the "word 'misappropriation' within the meaning of § 17a(4) of the Bankruptcy Act includes preferential payments of corporate funds by an officer of a corporation to himself to liquidate legitimate claims he has against his insolvent corporation." *Id.* at 409.

Because this Court finds that Fussell engaged in "fraud or defalcation while acting in a fiduciary capacity," it is unnecessary for it to determine whether Fussell's actions constituted "embezzlement or larceny" within the meaning of § 523(a)(4).

### IIb

Appellant U.V.B. further contends that Fussell's loan repayments should be excepted from discharge pursuant to § 523(a)(6). Section 523(a)(6) excepts debts from discharge "for willful and malicious injury by the debtor to another entity or the property of another entity." The term "willful and malicious conversion of the property of another" was contained in section 17(a)(2) of the former Bankruptcy Act. A debt arising from unlawful conversion of the property of another is not specified as nondischargeable in § 523(a) of the Code, because the words "willful and malicious injury" contained in § 523(a)(6) cover a "willful and malicious conversion." 3 Collier on Bankruptcy, 15th ed., Section 523.16, 523–114. Under the new Code, the "reckless disregard" definition of "willful" injury enunciated in *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), has been expressly overruled, and a debt is now nondischargeable on the grounds of conversion only if the creditor shows that the property was deliberately or intentionally converted in a malicious manner. H.R.Rep. No.95–595, 95th Cong., 1st Sess. 363 (1977); S.Rep.No.95–989, 95th Cong., 2nd Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The new Bankruptcy Code did not, however, statutorily alter the common law definition of "malicious."

> Nothing in the legislative history of § 523(a)(6), however, suggests that the Congress intended to overrule the Tinker Court's interpretation of the term "malicious" as it appeared in the prior statute, and this court declines to imply such an intention. It is this court's opinion, therefore, that the proper definition of the term "malicious" for the purpose of § 523(a)(6) is the common-law definition that was approved and adopted by the Court in *Tinker.*

> If an act of conversion is done deliberately and intentionally in knowing disregard of the rights of another, it falls within the statutory exclusion even though there may be an absence of special malice.

*In re McCloud,* 7 B.R. 819, 3 C.B.C. 701, 709 (Bkrtcy.1980); *see also, In re Auvenshine,* 9 B.R. 772, 3 C.B.C. 946 (Bkrtcy.1981). An injury to an entity or property may be "a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal

hatred, spite or ill will." *See Bennett v. W. T. Grant Co.*, 481 F.2d 664 (4th Cir. 1973).

This Court believes that Fussell's loan repayments were both willful and malicious and constituted an injury to U.V.B. Fussell acknowledged in his testimony at the trial that the loan repayments made from Agri-Service to himself did not improve the financial position of Agri-Service and that Agri-Service was suffering from a cash flow problem at the time that the loan repayments were made. Each of the loan repayments that Fussell withdrew caused overdrafts in the Agri-Service checking account in that there were insufficient funds to cover the withdrawals. Fussell stated that he did not feel an obligation to leave the money in the Agri-Service account even though he had represented to the bank that the loan proceeds of all of the loans made by U.V.B. would be used for the business. He stated that he felt he could use the money for "anything that he wanted" because he felt like he had been duped by the bank into putting up his home as collateral. Fussell was aware that Agri-Service needed the money that he was withdrawing. Obviously, Fussell's loan repayments constituted an impediment to U.V.B.'s ability to recover the loans extended to Agri-Service. Accordingly, this Court finds that the loan repayments to Fussell were effectuated in violation of § 523(a)(6).

It is the Court's opinion, therefore, that the debt herein at issue comes within the exception provided by § 523(a)(4) and § 523(a)(6) and is therefore not dischargeable. An appropriate ORDER will be entered this day.

The Clerk is directed to send certified copies of this Memorandum Opinion and Order to counsel of record.