In re Gary Anthony DECKER, Debtor.

BLACK'S INC., Plaintiff,

v.

Gary Anthony DECKER, Defendant.

Civ. No. A3–83–119.
Bankruptcy No. 81–05432.
Adv. No. 82–7003.

United States District Court,
D. North Dakota,
Southeastern Division.

Dec. 30, 1983.

Edward F. Klinger, Gunhus, Grinnell, Klinger & Swenson, Moorhead, Minn., for plaintiff.

J.P. Dosland and Joel Johnson, Dosland, Dosland & Nordhougen, Moorhead, Minn., for defendant.

## MEMORANDUM OF DECISION AND ORDER

BENSON, Chief Judge.

Black's, Inc. (Black's) appeals from the bankruptcy court's judgment allowing the discharge of Gary Anthony Decker's (Decker's) debts to Black's.

### PROCEDURAL BACKGROUND

In September of 1981 Decker filed a voluntary petition for relief under Chapter Seven of the Bankruptcy Code. Black's commenced an adversary proceeding in the bankruptcy court seeking a determination of the dischargeability of Decker's debts to Black's under 11 U.S.C. § 523. The bankruptcy court held Decker's debts to Black's did not fall within the exceptions to discharge under 11 U.S.C. § 523(a)(2) and (4). The court concluded that Decker did not obtain money, property, services, or other assets from Black's by false pretenses, a false representation, actual fraud, or any other fraudulent or dishonest act, as provided under 11 U.S.C. § 523(a)(2). In addition, the court concluded that no part of Decker's indebtedness to Black's was a result of fraud or defalcation while Decker was acting in a fiduciary capacity, embezzlement, or larceny, as provided in 11 U.S.C. § 523(a)(4).

The bankruptcy court ruled Decker's debts to Black's were dischargeable because Decker, acting as the president, director, shareholder, and principal manager of Black's, was given substantial authority by express or implied consent to operate the business of Black's in the manner in which it was conducted. The bankruptcy court entered judgment dismissing Black's complaint with prejudice.

Black's appeals the judgment of the bankruptcy court. In conducting review in

a bankruptcy appeal, the federal district court "may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge." Model Bankruptcy Rule (e)(2)(B). See In re Adoption of an Emergency Resolution Relating to Bankruptcy (D.N.D. Dec. 21, 1982) (order adopting Model Rule).

## FACTS

In November of 1974 Decker agreed to purchase the controlling interest in Black's, a corporation that operates retail women's clothing stores, from William Bunce and Anna Jane Schlossman. At the same time Black's agreed to redeem the shares of Marjorie Schuller and Paul Bunce for a set price payable over a period of ten years from corporate funds. Black's was an ongoing business, and Decker operated and managed the business successfully for several years. By 1978 Decker had acquired a controlling interest in Black's.

In 1974 Decker also agreed to purchase the stock of Crossroads from William, Nancy, and Paul Bunce. Crossroads is a corporation that has a separate corporate existence from Black's. Crossroads operated retail women's clothing stores in north Fargo and Bismarck. Decker's purchase of Crossroads stock extended over five years, and by 1979 Decker was the sole owner of Crossroads.

### A. Crossroads Transactions

Decker was the president and sole shareholder of Crossroads during the time he was president and operating manager of Black's. Black's, under Decker's control, purchased all the inventory and paid for all expenses of Crossroads. The purchases and expenses of Crossroads were carried on Black's books as "intercompany transactions." Decker treated Crossroads and Black's as though they were one company, although the ownerships of the two corporations were not the same.

During this time when Black's was financing Crossroads, Decker, as president of Crossroads, took $32,669.23 from Crossroads for his part in setting up a new Crossroads store in Bismarck. Even after the 1979 year-end statement showed a loss of $40,428 for Crossroads, Decker continued to expand Crossroads' debt to Black's in 1980. In 1980 and 1981 Black's and Crossroads became insolvent and filed for relief under the Bankruptcy Code. When Black's filed its bankruptcy petition in December of 1980, Crossroads, then owned and controlled solely by Decker, owed Black's $191,000.

Decker failed to disclose all facts relevant to the Crossroads-Black's transactions to his board of directors and shareholders or obtain their assent to the extensive financing given to Decker's company, Crossroads.

### B. Purchase Agreements with Mandel's

In 1980 serious cash flow problems forced Black's to sell their store in the West Acres Shopping Center. Decker arranged to sell the West Acres store to Mandel's, Inc. (Mandel's). Decker entered into two agreements on behalf of himself and Black's with Mandel's concerning the sale of the West Acres store. In the first agreement Mandel's agreed to purchase the property for $200,000 by assuming the $200,000 loan owed by Black's to First Bank of Fargo. In the second agreement Mandel's agreed to pay $75,000 for Black's leasehold rights in the West Acres store and for Black's cooperation and assistance in obtaining the landlord's consent to the assumption of the lease.

Decker admits he received and used for his personal use the first payment of $10,000 on the $75,000 agreement. Nothing in the written agreement indicates that Decker was to receive any funds personally. Decker did not disclose the $75,000 written agreement in the books of Black's or on any financial statement as a contract receivable of Black's. Decker did not disclose to the other directors, creditors, or former owners of Black's the $75,000 agreement with Mandel's or any oral agreements from which Decker was to receive funds personally. Decker personally benefitted in this transaction to the detriment of Black's without the full disclosure to and assent of the

directors or shareholders of Black's regarding this transaction.

### C. Sale of Accounts Receivable

Black's serious cash flow problems in 1980 also forced Black's to sell its accounts receivable. Decker, acting as president and manager of Black's, sold a portion of the accounts receivable of Black's to Dakota Financial Services for $134,073.13 based on a discount formula. Of this amount $115,-000 went to First Bank of North Dakota to pay off Black's loans secured by the accounts. Dakota Financial Services issued a check to Black's, in the amount of $19,-073.13, for the balance. Decker endorsed this check, as president of Black's, to himself. Decker again endorsed the check to Raymond A. Lamb, the president of Dakota Bank, to pay Decker's personal loan on a warehouse known as the McHose building.

When the board of directors of Black's learned of this use of corporate funds to pay Decker's personal debts, they confronted Decker. Decker informed them that he intended to sell the McHose building and repay the money to Black's by applying the proceeds of the McHose building sale to his stockholder account indebtedness.

Upon selling the McHose building, however, Decker did not apply the proceeds on his stockholder account indebtedness. Rather, he had the proceeds, in the amount of $21,379.82, applied on his open account, which was one of the accounts receivable already purchased and owned by Dakota Financial Services. Thus, Black's did not receive the money it should have from the sale of the accounts receivable, and Decker paid off his personal loan from Dakota Bank.

### D. The McHose Building

In 1979, when Decker had a controlling interest in and managed Black's and Crossroads, Decker personally purchased the McHose building for use as a warehouse. Decker purchased the building personally as a tax shelter and initially leased it to Black's for $800 per month. After Decker borrowed money for improvements on the McHose building, Decker, acting as president of Black's and the landlord of the building, altered the lease to $1,828.41 per month.

Decker admitted the lease payments from Black's covered Decker's personal loans to purchase and improve the building and all expenses for the McHose building. Yet, Decker used the balance of the proceeds of the sale of accounts receivable to pay off his personal loan on the McHose building without first disclosing the facts and getting the assent of the directors or shareholders of Black's.

This transaction was not in the best interest of Black's as evidenced by the fact that Decker's repayment to Black's became a part of his open account, which had already been sold to Dakota Financial Services at a discounted price. This was not only in violation of an express promise Decker made to Black's, but also a violation of his fiduciary duty to act in the best interests of Black's.

### E. Unlimited Business Exchange

During 1979 and 1980 Black's was involved in Unlimited Business Exchange (UBE), a bartering system for retail businesses. Decker admits he used UBE for his personal and family benefit, and Black's books showed this as an amount owing on Decker's personal charge account, or open account, with Black's. Decker's use of the UBE account greatly increased his debt to Black's during late 1979 and 1980 when Black's was already suffering serious cash flow problems.

Decker's extensive debts to Black's arising from the use of UBE for his personal benefit, without the express disclosure to the directors of Black's and without their consent, was a clear violation of his fiduciary duties to the corporation.

### F. Due from Stockholder Account

In 1980, despite the poor financial condition of Black's, Decker was withdrawing substantial funds from Black's for his personal use or for his purchase of Black's

stock. Decker did not feel it was necessary to tell the other directors how much money he was withdrawing from Black's. Decker did not sign promissory notes for this money.

The directors of Black's were unaware of Decker's withdrawal of over $116,000 from Black's for his personal use. The other directors or stockholders did not authorize these substantial "loans" of money to Decker for his purchase of Black's stock or his personal use.

Many of the dealings between Black's and Decker did not come to other director's attention until just prior to or after the filing of Black's bankruptcy petition. Decker did not *fully* disclose to the other directors, shareholders, or creditors of Black's information concerning his personal transactions with Black's, nor did he seek their approval. Although some of Decker's personal transactions with Black's may have been discovered by the directors if they had examined Black's books, he, in his fiduciary capacity, had the duty to disclose the personal transactions to the other directors and get their approval before proceeding.

## DISCHARGEABILITY OF THE DEBTS

Black's contends that Decker was in a fiduciary relationship with Black's by virtue of his control of Black's. Black's also contends that while Decker was in this fiduciary capacity, he committed fraud or defalcation, resulting in the nondischargeability of the debts Decker owes Black's in Decker's Chapter Seven bankruptcy.

█ Black's bases their claim of exception to discharge on one or both of two subsections of 11 U.S.C. § 523(a). The first is 11 U.S.C. § 523(a)(2), which calls for nondischarge when an individual debtor obtains money, property, services, or an extension, renewal, or refinance of credit, by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). The second is 11 U.S.C. § 523(a)(4), which provides that a debt is nondischargeable when incurred through fraud or defalcation while

acting in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. § 523(a)(4).

This court will determine the applicability of 11 U.S.C. § 523(a)(4). Black's contends the debts owed by Decker to Black's are debts incurred through fraud or defalcation while Decker was acting in a fiduciary capacity, barring discharge of the debts owed to Black's. Decker contends, however, that he did not have a fiduciary relationship with Black's within the meaning of 11 U.S.C. § 523(a)(4) and the debts were not incurred through fraud or defalcation.

The meaning of the term "fiduciary capacity" in section 523(a)(4) is not clear. The former Bankruptcy Act contained a provision expressly excepting from discharge debts created by fraud, embezzlement, misappropriation, or defalcation of the debtor while acting as an officer or in any fiduciary capacity. Bankruptcy Act § 17(a)(4), 11 U.S.C. § 35(a)(4). Section 523(a)(4) of the new Bankruptcy Code contains no reference to an "officer." 11 U.S.C. § 523(a)(4). Nevertheless, this "omission is without significance because an officer who misappropriates funds of a corporation is acting in a fiduciary capacity, and despite the deletion of the word 'officer,' the debt would be nondischargeable." *In re Fussell,* 15 B.R. 1016, 1020 (D.Va. 1981).

Similarly, in *Pepper v. Litton,* 308 U.S. 295, 306–07, 60 S.Ct. 238, 245–46, 60 S.Ct. 238 (1939), the Supreme Court held:

A director [of a corporation] is a fiduciary. *Twin-Lick Oil Co. v. Marbury,* 91 U.S. 587, 588 [1 Otto 587, 588, 23 L.Ed. 328 (1800)]. So is a dominant or controlling stockholder or group of stockholders. *Southern Pacific Co. v. Bogert,* 250 U.S. 483, 492 [39 S.Ct. 533, 537, 63 L.Ed. 1099 (1919)]. Their powers are in trust. See *Jackson v. Ludeling,* [88 U.S. 616] 21 Wall. 616, 624 [22 L.Ed. 492 (1800)]. Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the

transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. *Geddes v. Anaconda Copper Mining Co.,* 254 U.S. 590, 599 [41 S.Ct. 209, 212, 65 L.Ed. 425 (1921)]. The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length transaction. If it does not, equity will set it aside. While normally that fiduciary obligation is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee. For that standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders.

308 U.S. at 306–07, 60 S.Ct. at 245–46 (footnotes omitted). In *Pepper* the Court held that the bad faith of a corporate officer in the corporate bankruptcy proceeding could be used to set aside a claim even if it had been reduced to a judgment. *Id.* at 310, 60 S.Ct. at 246.

It is well established that corporate officers occupy a fiduciary relationship to the corporation and its creditors. *E.g., Id.; Westgor v. Grimm,* 318 N.W.2d 56 (Minn. 1982). Indeed, the "president of a private corporation entrusted with funds for a particular purpose ... [has] been held to be acting in a fiduciary capacity within the meaning of this [11 U.S.C. § 523(a)(4)] provision." *Fussell,* 15 B.R. at 1021, quoting 3 *Collier on Bankruptcy* § 523.14 at 523–104 (15th ed.). *See also In re Metz,* 6 F.2d 962 (2d Cir.1925) (term "officer" in section 17(a)(4) of former Bankruptcy Act includes officers of private corporations); *In re Bernard,* 87 F.2d 705 (2d Cir.1937) (officer's liabilities created by a known breach of duty to the corporation not dischargeable); *In re Hammond,* 98 F.2d 703 (2d Cir.), *cert. denied,* 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1938) (corporate director was a fiduciary under the former Act); *Hamby v. St. Paul Mercury Indemnity Co.,* 217 F.2d 78 (4th Cir.1954) (real estate agent is in fiduciary relation to clients); *John P. Maguire &*

*Co. v. Herzog,* 421 F.2d 419 (5th Cir.1970) (managing officer's use of corporate office to obtain a personal benefit at the expense of corporate creditors caused creditors' claims to be nondischargeable under section 17(a)(4) of the former Act).

In *Fussell,* 15 B.R. at 1021, the debtor had misused his position as a corporate officer to obtain payment of his personal loans in direct contravention of a subrogation agreement and in violation of his fiduciary duties. The federal district court in Virginia applied section 523(a)(4) of the new Bankruptcy Code to prevent the discharge of Fussell's debt to the corporation. The court held that the improper application of corporate funds by the corporate officer for his personal benefit was a "defalcation" within the meaning of the Bankruptcy Code. 15 B.R. at 1022, citing *Kadish v. Phoenix-Scotts Sports Co.,* 11 Ariz.App. 575, 466 P.2d 794 (1970).

The term "defalcation" has been construed to be broader than embezzlement or misappropriation. *Fussell,* 15 B.R. at 1022, citing 3 *Collier on Bankruptcy* § 523.14(b) at 523–96 (15th ed.). Facts that have previously been construed to constitute "misappropriation" by corporate officers under the former section 17(a)(4) now fall under the broader term "defalcation" in section 523(a)(4). *Fussell,* 15 B.R. at 1022.

Decker cites *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934) for his contention that the fiduciary relationship required under 11 U.S.C. § 523(a)(4) is limited to those fiduciary relationships arising from express and technical trusts. *Davis* is not controlling here. The Supreme Court in *Davis* was interpreting section 17 of the former Bankruptcy Act, which excepted from discharge liabilities created by fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity. 293 U.S. at 333, 55 S.Ct. at 153. Thus, when the Court interpreted the meaning of the term "fiduciary capacity" to require a technical or express trust, rather than a trust implied from a contract, the Court did

not mean to say that an officer of a corporation was not a fiduciary. In fact, the Supreme Court denied certiorari in a case that applied section 17 of the former Bankruptcy Act to debts of a corporate director or officer acting in violation of his fiduciary obligations. *In re Hammond,* 98 F.2d 703 (2d Cir.), *cert. denied,* 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1938).

This court holds the fiduciary relationship required under 11 U.S.C. § 523(a)(4) includes the fiduciary relationship between a corporate officer or director and the corporation.

■ It is a basic concept of corporate law that while occupying a fiduciary relationship, the officers and directors of a corporation are precluded from receiving any personal advantage without the fullest disclosure to, and assent of, all concerned. *See generally,* 19 Am.Jur. *Corporations* § 1281. Any contract in which corporate directors acquire a profit to the shareholders' detriment casts upon the directors the burden of affirmatively showing that the contract was fairly procured for value, or, if for less than value, upon full disclosure of all facts known to the directors and unknown to the shareholders. *Id.,* citing *Dawson v. National Life Insurance Co.,* 176 Iowa 362, 157 N.W. 929 (1916); *see also, Winkelman v. General Motors Corp.,* 44 F.Supp. 960, 985 (S.D.N.Y.1942) (full disclosure to stockholders required in transaction in which directors stand to profit at expense of corporation, if approval by stockholders is to protect directors). In *Pepper v. Litton,* the Court held that when any of the directors' or controlling stockholders' dealings with the corporation are challenged, the burden is on the director or stockholder to prove the good faith of the transaction and to prove its inherent fairness from the viewpoint of the corporation and those interested therein. 308 U.S. at 306, 60 S.Ct. at 245.

■ The general rule in bankruptcy is that the party objecting to discharge of a debt has the burden of satisfying the court that there are reasonable grounds for believing that the bankrupt debtor had committed one of the acts specified in the objection to discharge. If the objector meets this burden, the burden of going forward with the evidence is upon the bankrupt, with the court determining when this burden rests on the bankrupt. *Brown v. Buchanan,* 419 F.Supp. 199, 201 (E.D.Va.1975).

■ In this adversary proceeding to determine the dischargeability of Decker's debt to Black's, Black's had the burden to present evidence of reasonable grounds to believe that Decker's debts to Black's arose out of fraud or defalcation while acting in a fiduciary capacity to Black's. Black's presentation of evidence of Decker's transactions with Black's for Decker's personal benefit and to the detriment of Black's provides the reasonable grounds required. The burden of persuasion then shifts to Decker to prove that his transactions with Black's were in good faith and inherently fair from the viewpoint of the corporation and those interested therein, or that he disclosed the facts to all concerned and the other directors or shareholders assented.

The bankruptcy court held that Decker's debts to Black's were fully and accurately reflected upon the books, records, and accounts of Black's, which were always available for inspection by interested persons. This appears to be the basis of the bankruptcy court's conclusion that Decker incurred the debt to Black's with the express or implied knowledge or consent of persons interested in Black's business.

■ This court holds that full disclosure, required when a director deals with the corporation for his own benefit and to the detriment of the corporation, requires more than bookkeeping entries that the director has reason to believe the other directors or shareholders may not see. Full disclosure requires the director to bring all relevant facts to the attention of interested persons and to seek approval from the other directors or shareholders of the corporation.

■ This court holds Decker has failed to prove his transactions with Black's were in good faith and inherently fair from the viewpoint of the corporation and those in-

terested therein, or that he fully disclosed the facts to all concerned and the other directors or shareholders assented. Decker breached his fiduciary duty, as the president, principal manager, and director of Black's, to act in the best interests of Black's or with full disclosure and assent. Therefore, Decker's debts to Black's at issue in this case constitute debts incurred through fraud or defalcation while acting in a fiduciary capacity, as provided in 11 U.S.C. § 523(a)(4), and as such, the debts are nondischargeable.

IT IS ORDERED the judgment of the bankruptcy court is reversed. The financial obligations of the debtor to Black's, a corporation, have not been discharged. This court declines to make a determination as to the exact amount of those obligations. Black's may pursue its remedy through the state courts.

Let judgment be entered accordingly.