**In re Vern E. MEYER, Debtor.**

**William C. PERRIN, Appellee,**

**v.**

**Vern E. MEYER, Appellant.**

Civ. A. No. 2:88–2046–1.

Bankruptcy No. 87–0442.

Adv. No. 87–0107.

United States District Court,
D. South Carolina,
Charleston Division.

Feb. 24, 1989.

Curtis L. Coltrane, Herring, Meyer & Coltrane, P.A., Hilton Head Island, S.C., for appellee.

R. Michael Drose, Drose & Associates, North Charleston, S.C., for appellant.

HAWKINS, District Judge.

This matter is before the court on appeal from the United States Bankruptcy Court for the District of South Carolina.

FACTS:

On February 6, 1987, the appellant, Vern Meyer, filed a petition for bankruptcy in the Bankruptcy Court for the District of South Carolina. Thereafter, the appellee, William Perrin, filed an adversary complaint in the bankruptcy court seeking a determination that a debt that Meyer owed him is not subject to discharge in bankruptcy. The record indicates that in August 1984 Perrin obtained a state court judgment in the amount of one hundred fifty-five thousand and 00/100 dollars ($155,-000.00) against Meyer on causes of action for alienation of affections and criminal conversation. In Perrin's view, since the

---

torts underlying the judgment were willful and malicious, as defined in 11 U.S.C. § 523(a)(6), this debt could not be discharged by the bankruptcy court.

Following a trial on the merits, the Honorable J. Bratton Davis, United States Bankruptcy Judge, adopted Perrin's position, and thus concluded that the debt was exempt from discharge, 100 B.R. 297. Consequently, pursuant to 28 U.S.C. § 158, Meyer filed a number of exceptions to the decision of Judge Davis. Perrin has taken issue with each of these exceptions, and Meyer has filed a reply brief. Hence, the issues are ripe for review by this tribunal.

ANALYSIS:

### THE STANDARD OF REVIEW

28 U.S.C. § 158(a) grants the district court jurisdiction over appeals from the bankruptcy court, but it does not establish a standard of review for such proceedings. 28 U.S.C. § 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under titles 11 and all core proceedings arising under title 11, or arising in a case under title 11, ..., and may enter appropriate orders and judgments, subject to review under section 158 of this title." Core proceedings in which bankruptcy judges are empowered to enter final orders may be contrasted with non-core proceedings in which the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). This distinction is important because it is the basis upon which the district court determines the proper scope of review. See, In re Daniels–Head & Associates, 819 F.2d 914 (9th Cir.1987).

When reviewing the proposed findings of fact and conclusions of law submitted in a non-core proceeding, the district court is statutorily bound to conduct a de novo review of all matters to which specific objection is registered. 28 U.S.C. § 157(c)(1). However, final judgments in core proceedings are entitled to more deference, and so findings of law are reviewed de novo while findings of fact will not be upset unless clearly erroneous. Included in the definition of core proceeding are "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I). There is no doubt that the matter before the court is a determination regarding dischargeability. Accordingly, the bankruptcy court's conclusions of law will be reviewed de novo and its conclusions of fact will be overturned only if clearly erroneous.

### THE ISSUES RAISED ON APPEAL

First, Meyer charges that the court improperly construed the exception to discharge contained in 11 U.S.C. § 523(a)(6) as including the tort of criminal conversation. This argument is based on the fact that the 1978 revision of the bankruptcy code deleted specific reference to debts for criminal conversation, and instead provided that a discharge does not affect the validity of any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). It seems that no court has adopted the position urged by Meyer, and that at least one court has taken the view that a judgment debt arising from an action for criminal conversation is nondischargeable under § 523(a)(6). In re Aguilar, 33 B.R. 535 (Bkr.N.D.Oh.1983). The reasoning contained in Aguilar is persuasive and dispositive of the issue raised here. Accordingly, this argument does not provide a basis for reversal of the bankruptcy court's decision.

Second, Meyer avers that Judge Davis erred in omitting the "mitigating evidence" offered at trial from his findings of fact. The facts found by Judge Davis indicate that Perrin and his wife moved to Denver, North Carolina in 1979. Subsequently, in July 1981, Theresa met Meyer at her place of employment. Approximately one year later, Theresa left her husband and, shortly thereafter, she engaged in sexual relations with Meyer while still married to Perrin. Although testimony was offered at trial which would tend to reduce the culpability of Meyer's conduct, there was evidence to the contrary. Since Judge Davis did not include this "mitigating evidence" in his findings of fact, it is obvious that he concluded that it was not truthful. Such a

determination is adequately supported by the record, and consequently, this contention is without merit.

Third, Meyer argues that the trial court applied an improper legal standard regarding the existence of implied malice. As noted above, 11 U.S.C. 523(a)(6) provides that a discharge does not extinguish any debt for willful and malicious injury by the debtor to another entity or that entity's property. While there is some disagreement on the subject, the Fourth Circuit Court of Appeals has determined that malice under § 523(a)(6) may be specific or implied. *St. Paul Fire & Marine Insurance Co. v. Vaughn*, 779 F.2d 1003 (4th Cir.1985). In this context, implied malice is established by a showing that the debtor intentionally committed an inherently wrongful act without just cause or excuse. *United Virginia Bank v. Fussell*, 15 B.R. 1016 (W.D.Va.1981); *Edge v. Simmons*, 17 B.R. 259 (N.D.Ga.1982). Of these three elements, Meyer takes exception only to the legal standard applied to the wrongfulness issue.

Judge Davis concluded that Meyer's conduct was inherently wrongful because adultery is actionable in the courts of South Carolina. Cognizant of the fact that a society's values are reflected in its laws, a court faced with a similar situation stated that the act of criminal conversation is wrongful by virtue of the fact that the law recognizes a cause of action for sexual relations outside of marriage. *In re Aguilar*, 33 B.R. 535 (Bkr.N.D.Oh.1983). Although Meyer complains that this reasoning is circular, it is logical. This court cannot conceive of a better example of an inherently wrongful act than one that violates public values as expressed in the civil or criminal law. Hence, since the trial court applied the proper legal standard for implied malice, its judgment will not be displaced.

Finally, Meyer charges that the bankruptcy court improperly rejected the testimony of Theresa and Paula Perrin and afforded undue weight to the testimony of Lorraine Meyer. Particularly, Meyer takes issue with Judge Davis' finding that There-sa Perrin's affections were alienated by his conduct. In support of this position, he points to Theresa's testimony at trial to the effect that her marriage had deteriorated to a point such that reconciliation was impossible long before her relationship with Meyer began. Oppositely, Perrin testified that just before Theresa's intimate relationship with Meyer began, his marriage was as good as it had ever been. From this testimony, the trial court could have reasonably concluded that Theresa's affections were alienated by Meyer's conduct. As this finding is not clearly erroneous, it will not be disturbed on appeal.

Furthermore, Meyer urges that the court should have accepted Theresa's statements as to when the relationship began. The evidence presented to Judge Davis was in conflict as to when the relationship between Meyer and Theresa commenced. Witnesses on behalf of Meyer testified that the relationship did not begin until August 1982, while evidence offered by Perrin tended to show that it started much earlier. After considering the evidence, Judge Davis concluded that the couple engaged in sexual relations shortly after her separation in June 1982 but before she was divorced. Since the lower court resolved this conflict in favor of Meyer, it is specious for him to complain that these factual findings are erroneous.

CONCLUSION:

Accordingly, based upon the foregoing, it is

ORDERED, that the judgment of the bankruptcy court dated June 8, 1988 be, and the same is hereby, affirmed.

AND IT IS SO ORDERED.