**In re Alexander E. WOLFINGTON t/a Wolfington Interest, Debtor.**

**Raphael BELLITY, Plaintiff,**

v.

**Alexander E. WOLFINGTON t/a Wolfington Interest, Defendant.**

**Bankruptcy No. 82–03464K.
Adv. No. 82–3093K.**

United States Bankruptcy Court,
E. D. Pennsylvania.

April 26, 1985.

Jay S. Ruder, Philadelphia, Pa., for plaintiff.

Edward D. DiDonato, Philadelphia, Pa., for trustee.

Alexander Wolfington, Philadelphia, Pa., for debtor/defendant.

John Judge, Philadelphia, Pa., trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This matter comes before the court on a complaint to determine dischargeability of a debt pursuant to section 523(a)(4) and (a)(6) of the Bankruptcy Code ("Code").[1] The plaintiff alleges that the debt in issue arose from the debtor's defalcation of escrow funds and that the debtor's conversion of such funds constituted a willful and malicious injury to plaintiff. For the reasons stated herein, we will grant the relief requested and hold that the debt is non-dischargeable.

### The underlying facts are largely undisputed:[2]

In January, 1981, Raphael Bellity ("plaintiff") entered into an Agreement of Sale with Alexander E. Wolfington, ("debtor"), as general partner of Wolfington-Chestnut Associates[3] ("WCA"), for the purchase of a condominium unit to be located at 100 Chestnut Street, Philadelphia, Pennsylvania. Pursuant to the Agreement of Sale, the plaintiff paid the sum of $10,000.00 as a deposit to Wolfington Corporation. The money was to be held in escrow, in accordance with the Act of General Assembly of July 9, 1957, P.L. 698, as amended, until the Agreement of Sale was consummated or terminated. The money was deposited into an escrow account in the name of Wolfington Corporation.

During the time period relevant to the plaintiff's cause of action, Wolfington Corporation was a privately-held corporation in the real estate brokerage business in the Commonwealth of Pennsylvania. The broker of record was Thomas J. Guglielmo.[4] The corporation served as a "captive broker" for the many real estate developments and partnerships in which the debtor was involved. The debtor and his wife each owned fifty percent (50%) of the shares of the corporation and were directors of the corporation. The debtor was President, Secretary and Treasurer of the corporation.

Sometime prior to December 31, 1981, and without the knowledge or permission of the plaintiff, the deposit money was withdrawn from the escrow account and used to defray WCA's costs of developing the 100 Chestnut Street property. The debtor was one of the two (2) people at Wolfington Corporation who had authority to make withdrawals from the escrow account.

Wolfington-Chestnut Associates defaulted under the Agreement of Sale by failing to go to settlement on or before December 31, 1981. When the plaintiff, through his counsel, demanded return of the $10,000.00 deposit, the debtor stated that the deposit money was no longer in his possession or in the possession of the Wolfington Corporation.

On July 22, 1982, the debtor filed a petition under Chapter 7 of the Bankruptcy Code. The instant complaint was filed by the plaintiff on November 19, 1982. The debtor was represented by counsel at trial. After the trial was completed, we reserved decision on the matter pending the submis-

---

1. The complaint is formally titled "Complaint Objecting to Discharge of Debtor". In the prayer for relief, the plaintiff requests that the debtor be denied a discharge and that the obligation of the debtor to the plaintiff be declared nondischargeable. However, it is clear from the arguments made at trial as well as the proposed findings of fact, conclusions of law, and memorandum of law that the plaintiff is seeking to have a particular debt excepted from discharge rather than a total denial of discharge. Therefore, we will treat the complaint as a complaint to determine dischargeability.

2. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Bankruptcy Rules.

3. Wolfington-Chestnut Associates, a limited partnership, was formed for the purpose of developing the property at 100 Chestnut Street, Philadelphia, Pennsylvania. The debtor was the general partner of Wolfington-Chestnut Associates.

4. It has not been established that the debtor in his own capacity was licensed as an agent or broker to practice real estate in the Commonwealth of Pennsylvania.

sion of proposed findings of fact, conclusions of law and memoranda of law.[5]

## DISCUSSION

Section 523(a)(4) of the Code provides: A discharge under section 772 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4).

■ In order to prevail in a dischargeability action under § 523(a)(4), a plaintiff must prove two (2) facts: (1) that the debt arose while the debtor was acting in a fiduciary capacity and (2) that the debt was incurred by fraud, defalcation, embezzlement, or misappropriation. *See Aetna Insurance Co. v. Byrd* (In re Byrd), 15 B.R. 154, 155 (Bankr.E.D.Va.1981).

■ It is well settled that there is no necessity to show any intentional wrongdoing by a debtor in order to establish that a debt was created by defalcation. *Id.* at 156. Defalcation includes the failure of a fiduciary to account for money he received in his fiduciary capacity. It is sufficient if the misrepresentation is due to negligence or ignorance. It is irrelevant that the default by the fiduciary was innocent. *Id.* Moreover, it is clear that the word "defalcation" is a more encompassing term than "embezzlement" or "misappropriation". *Jasel Building Products Corp. v. Polidoro* (In re Polidoro), 12 B.R. 867, 868 (Bankr.E.D.N.Y.1981) *citing Central Hanover Bank and Trust Co. v. Herbst*, 93 F.2d 510 (2nd Cir.1937).

The Court in *Central Hanover* stated that:

When a fiduciary takes money upon a conditional authority which may be revoked and knows at the time that it may,

he is guilty of a defalcation though it may not be a fraud, or an embezzlement, or perhaps not even a misappropriation.

93 F.2d at 512.

In this case, there is no doubt that a defalcation of trust funds occurred. The debtor admitted upon cross-examination that he authorized withdrawal of the funds from the escrow account and that they were used to defray the costs incurred by Wolfington-Chestnut Associates in developing the 100 Chestnut Street property.[6] The issue is whether the debtor was acting in a fiduciary capacity when the defalcation occurred. Even though the debtor admits that he authorized withdrawal of the funds, he contends that the corporation, not he, was the escrow holder and fiduciary; and since he and the corporation are separate and distinct entities, the obligation to repay the plaintiff his deposit money is the corporations's and not the debtor's personally. We disagree. The debtor's position as President, director and fifty percent (50%) shareholder of the corporation with undisputed control over the escrow account, plus the fact that he held himself out to be a real estate agent/broker, establish the requisite fiduciary relationship between the plaintiff and the debtor.

The term "fiduciary" has been consistently construed as limited to express trusts and not to trusts imposed because of an act of wrongdoing out of which the debt arose, or to trusts implied by law from contracts. *Borg-Warner Acceptance Corp. v. Miles* (In re Miles), 5 B.R. 458 (Bankr.E.D.Va. 1980). For over a century, the United States Supreme Court has narrowly and strictly construed the exception to discharge for fraud while acting in a fiduciary capacity. *Id.* at 460. The Supreme Court has held that the exception applies only when the person who created the debt was already a fiduciary when the debt arose. *Davis v. Aetna Acceptance Co.*, 293 U.S.

---

**5.** The debtor filed proposed findings of fact, conclusions of law and a memorandum of law *pro se.* The District Court granted counsel for the debtor leave to withdraw his appearance as counsel in this adversary proceeding. *See Belli-*

*ty v. Wolfington* (In re Wolfington), No. 83–5135, slip op. (E.D.Pa. July 31, 1984).

**6.** N.T. p. 14. *See also* debtor's proposed findings of fact nos. 12 and 13.

328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Consequently, courts interpreting this section have attempted to avoid construing the exception so broad that it reaches ordinary commercial relationships such as debtor-creditor and principal-agent. *Miles,* 5 B.R. at 460. Nevertheless, real estate agents and real estate brokers have been held to occupy a fiduciary relationship with their clients. *Dempsey v. Lawrence* (In re Lawrence), 10 B.R. 853, 855 (Bankr.E.D.Va. 1981); *BVA Credit Corp. v. Brown* (In re Brown), 2 Bankr.Ct.Dec. 97 (E.D.Va.1975); *Hamby v. St. Paul Mercury Indemnity Co.,* 217 F.2d 78 (4th Cir.1954).

> In *Hamby,* the Court of Appeals stated: The term fiduciary is derived from the civil law. It connotes the idea of trust or confidence. The relation arises whenever the property of one person is placed in charge of another ...
>
> Real estate agents occupy a fiduciary relation to their clients, and so long as that relation continues the agent is under a legal obligation, as well as a high moral duty, to give to his principal loyal service ...
>
> Certainly there can be no question as to the existence of a fiduciary capacity in a case where the agent has been entrusted with money to be used for a specific purpose. To hold otherwise, we think, would be to narrow unreasonably the broad language used by Congress in denying discharge where there has been misappropriation by a bankrupt while acting "in any fiduciary capacity" ... *Not all agents act in a fiduciary capacity; but, certainly, an agent is acting in such capacity where he is handling funds which have been entrusted to him to be applied to a specific purpose ...* (emphasis added)

*Id.* at 80, 81.

■ It is well established that corporate officers occupy a fiduciary relationship to the corporation and its creditors. *Black's Inc. v. Decker* (In re Decker), 36 B.R. 452, 457 (D.N.D.1983) (the fiduciary relationship required under 11 U.S.C. § 523(a)(4) includes the fiduciary relationship between a corporate officer or director and the corporation); *United Virginia Bank v. Fussell* (In re Fussell), 15 B.R. 1016, 1021 (W.D.Va. 1981); *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Indeed, the president of a private corporation entrusted with funds for a particular purpose ... (has) been held to be acting in a fiduciary capacity within the meaning of this [11 U.S.C. § 523(a)(4)] provision. *Fussell,* 15 B.R. at 1021, *quoting* 3 *Collier on Bankruptcy,* § 523.14 at 523–104 (15th ed. 1984). *See also, Bloemecke v. Applegate,* 271 F. 595 (3d Cir.1921); *In re Bernard,* 87 F.2d 705 (2d Cir.1937) (officer's liabilities created by a known breach of duty to the corporation not dischargeable); *In re Hammond,* 98 F.2d 703 (2d Cir.1938), *cert. denied,* 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1938) (corporate director was a fiduciary under the former Act); *John P. Maguire & Co. v. Herzog,* 421 F.2d 419 (5th Cir.1970) (managing officer's use of corporate office to obtain a personal benefit at the expense of corporate creditors caused creditors' claims to be nondischargeable under section 17(a)(4) of the former Act).

In *Fussell,* the debtor was held to have misused his position as a corporate officer to obtain repayment of his personal loans to the corporation, in direct contravention of a subrogation agreement and in violation of his fiduciary duties. The federal district court in Virginia applied § 523(a)(4) of the Code to prevent the discharge of Fussell's debt to the corporation. The court held that the improper application of corporate funds by the corporate officer for his personal benefit was a "defalcation" within the meaning of § 523(a)(4). The Court stated:

> Fussell's dealings with U.V.B. were all undertaken pursuant to the subrogation agreement. The existence of the subrogation agreement, when considered in conjunction with Fussell's status as President, majority shareholder and member of the board of directors ... constitutes such a special relationship allowing U.V.B. as a corporate creditor, to maintain this cause of action ... It is uncon-

troverted that Fussell personally benefited from the use of such funds. Section 523(a)(4) of the Bankruptcy Code is appropriately applied to prevent the discharge of such debts. Such a diversion of corporate funds to personal use in violation of the terms of the subordination agreement constitutes the "fraud or defalcation" within the meaning of § 523(a)(4).

15 B.R. at 1021.

■ Upon consideration of the evidence presented in this case, we conclude that the debtor is liable, in his capacity as a corporate officer, director, and shareholder, for misappropriation of the plaintiff's deposit money. The money was deposited into a special escrow account for a specific purpose and was not to be withdrawn until the consummation or termination of the sale agreement. The debtor, however, authorized withdrawal of these trust funds and used them for a purpose which personally benefited him, that is, the expenses of developing the Chestnut Street property. More than a misappropriation of corporate funds was involved here. The misappropriated funds were, in fact, trust funds held in an account in the corporation's name. Perhaps, if the debtor was a salesperson with no control over the trust funds, the requisite fiduciary relationship between him and the plaintiff might not have arisen. But, under the facts of this case, where the debtor was President of the corporation, and a director and fifty percent (50%) shareholder, he cannot sit back and claim that, because it has not been established that he was a real estate broker or agent in his own capacity, he has no responsibility for the misappropriated funds. We find that the debtor, while acting in a fiduciary capacity, misused the escrow funds, and that the underlying debt owed to the plaintiff as a result of his defalcation, is non-dischargeable under § 523(a)(4) of the Code. Therefore, it is unnecessary to reach the plaintiff's arguments under § 523(a)(6) of the Code.

The events which took place in this case are not uncommon in the real estate industry. But that does not mean that they are to be condoned. The Bankruptcy Judge in the *Lawrence* case made the following observations:

In the *Brown* case this Court encountered and spoke at length about this matter of real estate people using funds held in escrow. In short, it is the situation of a developer, contractor or broker who falls short of funds for any number of reasons, who uses funds in hand being held for future work and who anticipates restoring the funds from future contracts and payments thereon. In the *Brown* case the Court began the opinion with a quotation from a witness in the case:

"To be honest with you, if that is the only way you built the United States—son, that is a practice in construction. You borrow from Peter to pay Paul, and when Paul goes broke, you rob Rosemary, and if not, you become a pimp and start putting somebody out on the street and get it done." Witness Campo.

One would think this is not the prevailing practice in the trade. There are, obviously, perfectly reliable entities in the field. The matter is, unfortunately, a recurring one.

*Brown* stands for the proposition that one who receives such funds has a fiduciary responsibility to safeguard them and use them solely for the purpose intended. The law, this Court, will not abide the system.

10 B.R. at 856.

We conclude with a quotation from a case which seems particularly apropos here:

The purpose of the Bankruptcy Act is to grant a discharge of honest debts to honest debtors, not to grant discharges to those who have dishonestly misappropriated funds entrusted to them.

*Hamby, supra,* 217 F.2d at 81. An Order follows granting judgment in the plaintiff's favor.