In re Leo C. LOEVNER, Debtor.

Grey HODNETT, Trustee of the Edward Hodnett Trust and of the Jessie P. Hodnett Trust, Plaintiff,

v.

Leo C. LOEVNER, Defendant.

Bankruptcy No. 93–11857–AT.
Adv. No. 93–1219–T.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

May 2, 1994.

Mark A. Bayer, Washington, DC, for plaintiff.

David E. Jones, Fairfax, VA, for debtor/defendant.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Trial was held on February 28 and March 1, 1994, on plaintiff's complaint to determine the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4). After the presentation of evidence and the argument of counsel the court ruled in favor of plaintiff. This memorandum opinion supplements the court's bench ruling.

#### Findings of Fact

Debtor filed a voluntary chapter 7 petition on April 30, 1993. Plaintiff filed this complaint on behalf of the trusts in his capacity as trustee.

In July 1985 plaintiff engaged the services of Cardinal Financial Planning, Inc. (CFP) to render investment advice and to manage the investment of trust funds. CFP was at all relevant times a registered investment advisor under the Virginia Securities Act and under the Investment Advisors Act of 1940.

Debtor was an officer, director and 50% shareholder of CFP and controlled the investment of client funds as well as CFP's daily operations. Debtor was the alter ego of CFP.

Plaintiff signed an Investment Management Agreement that designated CFP as plaintiff's attorney-in-fact for securities transactions. Under this arrangement plaintiff placed trust funds with CFP for investment. Debtor and CFP were fiduciaries of plaintiff and the two trusts.

During the fall of 1987, after a significant drop in the stock market, plaintiff met with debtor to discuss appropriate investment strategies. Debtor recommended to plaintiff that the trust funds be placed in secure investments such as certificates of deposit. Plaintiff agreed to debtor's recommendations, and on or about November 3, 1987, debtor transferred the sums of $40,000.00 belonging to the Edward Hodnett Trust and $30,000.00 belonging to the Jessie P. Hodnett Trust to a single certificate of deposit. Debtor then pledged this certificate of deposit as collateral for a letter of credit for the benefit of two persons unknown to plaintiff. On December 1, 1987, debtor sent plaintiff two letters informing him that the funds had been placed in a certificate of deposit in Dominion Bank.

On December 16, 1987, debtor sent a letter to plaintiff stating that debtor had placed an additional $45,000.00 of Jessie P. Hodnett Trust funds in a certificate of deposit in Dominion Bank. In fact, debtor did not transfer this $45,000.00 to a certificate of deposit. Instead, without notice to plaintiff, debtor loaned the money to MLJ Limited Partnership (MLJ), whose general partner was Cardinal Financial Services, Inc. (CFS), a corporation of which debtor was president, a board member and 50 percent shareholder.

On December 24, 1987, without notice to plaintiff, debtor terminated the $70,000.00 certificate of deposit at Dominion Bank and loaned those funds to MLJ. Debtor in his capacity as president of CFS executed promissory notes from MLJ for the loan transactions.

Between January 1988 and June 1989, despite the fact that no certificates of deposit existed, debtor sent quarterly reports and

other correspondence to plaintiff confirming that the trust funds were indeed invested in certificates of deposit.

On July 25, 1989, plaintiff met with debtor to inquire about the status of the trust investments. Debtor told plaintiff that certificates of deposit were still held for the benefit of the trusts in Dominion Bank. However, plaintiff went to Dominion Bank immediately after his conversation with debtor and learned that no certificates existed.

Plaintiff immediately confronted debtor, who admitted that the trust funds were not held in certificates of deposit. Debtor then revealed to plaintiff for the first time that the funds had been loaned to MLJ. The following day, debtor called plaintiff by telephone to apologize for having provided false information to plaintiff.

Plaintiff considered the supposed investments of trust funds in certificates of deposit to be crucial to the safety and security of the trust investments. Plaintiff would have immediately demanded return of the funds and would have terminated all relationships with debtor and with CFP had he known that the money was not in a federally insured bank but had been disbursed instead as unsecured loans to MLJ.

In reliance upon debtor's false statements, reports and correspondence, plaintiff permitted debtor to continue to use the trust funds. As a further consequence of debtor's conduct, plaintiff lost most of the funds entrusted to debtor. MLJ has no assets and further repayment of the loans is unlikely.

As a result of the lost investments, plaintiff obtained judgment against debtor defendant for $115,000.00 in the Circuit Court of Fairfax County, Virginia. The balance now due plaintiff is $107,000.00.

### Discussion and Conclusions of Law

■ Debtor is not insulated from the dischargeability issues here by virtue of the fact that the transactions were done in the name of the corporation CFP. Debtor was an officer, director and 50 percent shareholder in the corporation and, most importantly, was the person who made the investment decisions concerning client funds. *See Mostiler v. Couch (In re Couch)*, 100 B.R. 802, 808

(Bankr.E.D.Va.1988). Debtor was the alter ego of CFP.

■ Under Virginia law, piercing the corporate veil requires findings that (i) the corporate entity is the alter ego of the individual sought to be charged and (ii) the corporation was a device or sham used to disguise wrongs, obscure fraud or conceal crime. *Perpetual Real Estate Servs., Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 548 (4th Cir.1992); *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 360 S.E.2d 828, 831 (1987).

These elements are present in the instant case. Debtor is the alter ego of CFP, and the court finds that CFP was used in conjunction with MLJ to obscure fraudulent conduct with respect to plaintiff. Therefore, the court may invoke the doctrine of piercing the corporate veil to hold debtor personally liable for acts of the corporation.

Two nondischargeability issues are presented, both of which are applicable to debtor's reprehensible conduct.

### ACTUAL FRAUD PURSUANT TO § 523(a)(2)(A).

■ The necessary elements to a determination of nondischargeability under § 523(a)(2)(A) are

(1) That the debtor made misrepresentations,

(2) That at the time the debtor knew the representations were false,

(3) That the debtor made the misrepresentations with the intention and purpose of deceiving the creditor,

(4) That the creditor relied on the representations, and

(5) That the creditor sustained loss and damage as the proximate result of the misrepresentations.

*See Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967).

■ Debtor's statements, reports and correspondence concerning the existence of certificates of deposit were misrepresentations of material facts which were made by debtor in an effort to deceive plaintiff and upon which plaintiff relied, permitting debtor and CFP to continue to use the trust funds and in

violation of an express trust. As a result of those misrepresentations, debtor lost $107,000.00 of plaintiff's trust funds. This conduct on the part of debtor constituted fraud.

Even if it could be argued that debtor intended to repay the funds, his lending plaintiff's funds on an unsecured basis while lying to the plaintiff about the nature of the investments constituted reckless conduct tantamount to fraud. *See Western Union Corp. v. Ketaner (In re Ketaner)*, 154 B.R. 459, 465 (Bankr.E.D.Va.1992); *Visotsky v. Woolley (In re Woolley)*, 145 B.R. 830, 834 (Bankr. E.D.Va.1991).

The plaintiff's judgment of $107,000.00 will be excepted from debtor's discharge under § 523(a)(2)(A).

*DEFALCATION WHILE IN A FIDUCIARY CAPACITY PURSUANT TO § 523(a)(4).*

It is undisputed that the execution of account agreements and the placement of funds created an express trust relationship between plaintiff and CFP. Consequently, debtor was also in a fiduciary relationship to the plaintiff and the trusts.

Defalcation includes the failure of a fiduciary to account for money received in his fiduciary capacity. The misrepresentation may be due to negligence or ignorance. Actual fault by the fiduciary is irrelevant. *See Bellity v. Wolfington (In re Wolfington)*, 48 B.R. 920, 923 (Bankr.E.D.Pa.1985).

The court concludes that transfer of the trust funds to MLJ without notice to plaintiff and the failure to properly account for the location of funds constitute defalcation by debtor while acting in a fiduciary capacity. *See In re Couch*, 100 B.R. at 808. Thus the judgment debt is also excepted from discharge under § 523(a)(4).

A separate order will be entered.